UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PHILLIP DOUGLAS CIRISAN,
a/k/a "Phillip-Douglas:Cirisan©", # 257461,   )
)
                     Plaintiff,   )    Case No. 1:07-cv-1281
)
v.   )    Honorable Janet T. Neff
)
DAVE BURNETT, et al.,   )    **REPORT AND RECOMMENDATION**
)
                     Defendants.   )
_____)

      This is a civil rights action brought by a state prisoner under to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-2(a). Plaintiff is currently in inmate at Parnall Correctional Facility (SMT), located in Jackson, Michigan. (docket # 38).  The events giving rise to plaintiff's complaint occurred in April and May of 2007 at the Lakeland Correctional Facility (LCF), located in Coldwater, Michigan.  Plaintiff named three defendants in his complaint: (1) Dave Burnett, former Special Activities Director for the Correctional Facilities Administration (CFA); (2)  LCF's Warden, Carol Howes; and (3) LCF's Chaplain, Donald Tompkins. Plaintiff alleges that defendants violated his statutory and First Amendment rights by prohibiting him from possessing and wearing a green "I.D.F. (Israel Defense Forces) yarmulke" with "I.D.F. Israeli Army" written on the side in "big yellow letters."   Plaintiff sued defendants in their official capacities for alleged violations his rights under RLUIPA and in their individual capacities for alleged violations of his First Amendment rights. (Complaint, ¶¶ 6-8).

He seeks an award of monetary damages on his First Amendment claims and declaratory relief on his RLUIPA claims. (Complaint at 13).

The matter is currently before the court on defendants' May 22, 2008 motion for summary judgment. (docket # 22). On May 22, 2008, the court entered an order advising plaintiff of his opportunity to submit affidavits, documents and other materials in opposition to defendants' motion within twenty-eight days of the date of the court's order. (docket # 25). On June 23, 2008, plaintiff filed a brief in opposition to defendants' motion for summary judgment. (docket # 27). Plaintiff did not submit any affidavits in support of his claims. Plaintiff's complaint is not verified or submitted under penalty of perjury.[1]  For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted, and that judgment be entered in defendants' favor on all plaintiff's claims.

---

[1] Plaintiff signed his complaint as "Phillip-Douglas Cirisan©". Indulgently, I have treated this as adequate to serve as the signature required by Rule 11(a) of the Federal Rules of Civil Procedure. The sanctionable practice of a prisoner seeking payment for unauthorized use of a prisoner's purportedly copyrighted name is not at issue in this lawsuit. *See e.g.*, *Lewis v. Caruso*, No. 1:08-cv-28, 2008 WL 4283652, at * 4 (W.D. Mich. Sept. 10, 2008)(collecting cases).

Plaintiff's purported verification is limited to the following statement: "I 'Phillip-Douglas:Cirisan©' swear and affirm that all the facts contained within this complaint are true and correct to the best of my information, knowledge and belief." (docket # 1 at 14). Plaintiff's "verification" is not made under penalty of perjury and does not satisfy the requirements for an unsworn declaration under 28 U.S.C. § 1746. Thus, plaintiff's complaint cannot be considered as an affidavit in opposition to defendants' motion. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Counts v. Kraton Polymers, U.S., LLC*, 260 F. App'x 825, 829 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir.1992).

**Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *S.S. v. Eastern Ky. Univ.*, 532 F.3d 455, 452 (6th Cir. 2008). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff was an inmate at the Lakeland Correctional Facility (LCF) in early 2007. He is generally permitted to wear a yarmulke under

applicable MDOC policy directives. (Burnett Aff. ¶¶ 9, 12). Religious yarmulkes are generally plain, without political or military slogans or identification. (Burnett Aff. ¶ 9).

On November 29, 2006, Assistant Deputy Warden Beckwith approved a list of items that Jewish prisoners at LCF and the Florence Crane Correctional Facility (ACF) had requested. Among the eight "kippahs" (another name for yarmulke) listed in paragraph six of Beckwith's memorandum was a "Zahal 'IDF" kippah. (docket # 1, Ex. F). There is no evidence that ADW Beckwith was aware of what "Zahal IDF" meant when she approved the purchase of this item. On December 6, 2006, a $5.00 disbursement authorization was approved for a "Zahal Green knit Kippah" from Jewish Voice Ministries in Tiberias, Israel. (docket # 1, Ex. G). Plaintiff received the Israeli Army yarmulke on or about February 13, 2007.

On April 16, 2007, plaintiff wrote a letter to LCF's Warden Carol Howes stating, "I have found out that several complaints have been lodged by prisoners who have a problem with the Yarmulke that I currently wear, which is an I.D.F. (Israeli Defense Force) Kippah which was approved by ADW L. Beckwith." (docket # 1, Ex. H). Plaintiff described the yarmulke as being green with "I.D.F. Israeli Army" written on the side in "big yellow letters." (docket # 27, Ex. A). Plaintiff threatened to file a lawsuit against Warden Howes under RLUIPA if he were not allowed to keep the Israeli Army yarmulke. (docket # 1, Ex. H).

Warden Howes, upon receipt of plaintiff's letter, contacted Special Activities Coordinator Burnett, and asked Burnett whether this Israeli Army yarmulke should remain in plaintiff's possession. (Howes Aff. ¶ 3, docket # 23). Burnett responded that this item should be confiscated. The Michigan Department of Corrections does not permit prisoners to possess or wear military apparel, because it is likely to be inciteful or inflammatory to other prisoners. (Burnett Aff.

¶¶ 11, 13; Howes Aff. ¶ 3). Warden Howes advised plaintiff that he would not be allowed to keep this item. (docket # 1, Ex. H).

On May 1, 2007, defendant Tompkins issued a contraband removal slip for "'1' yarmulke (green in color) with Israeli Army insignia." (docket # 1. Ex. K). When plaintiff surrendered the Israeli Army yarmulke, he immediately pulled another yarmulke from his pocket and placed it on his head. (Tompkins Aff. ¶¶ 5-6).

Plaintiff filed this lawsuit on December 21, 2007.

**Discussion**

1. First Amendment Claims

Plaintiff seeks an award of monetary damages against defendants Burnett, Howes, and Tompkins in their individual capacities for alleged violations of plaintiff's First Amendment rights. Upon review, I find that no reasonable trier of fact could find that the actions of the defendants violated plaintiff's First Amendment rights. Assuming *arguendo* that plaintiff could establish a constitutional violation, defendants would nonetheless be entitled to entry of judgment in their favor as a matter of law on the basis of qualified immunity.

A. First Amendment

The First Amendment states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech . . . ." U.S. Const. amend. I. The Supreme Court has held that by incorporation through the Fourteenth Amendment, the Free Exercise and Freedom of Speech Clauses apply to the States. *See Bridges v. California*, 314 U.S. 252, 263 n. 6 (1941); *Cantwell v. Connecticut*, 310 U.S. 296, 303

(1940). A prisoner, however, retains only those First Amendment freedoms which are "'not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system.'" *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)); *see Turner v. Safley*, 482 U.S. 78 (1987). Lawful incarceration legitimately requires the retraction or withdrawal of many rights and privileges as a necessary consequence of society's need to deter and punish crime. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives -- including deterrence of crime, rehabilitation of prisoners, and institutional security." *Pell v. Procunier*, 417 U.S. at 822-23. "The Supreme Court has held that in most circumstances, prison officials 'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)); *see Beard v. Banks*, 548 U.S. 521, 525 (2006).

In *O'Lone v. Estate of Shabazz*, the Supreme Court held that the constitutionality of prison regulations that infringe upon a prisoner's rights under the First Amendment must be evaluated under the test of *Turner v. Safley*. The Supreme Court noted the well established principle that lawful incarceration legitimately requires restrictions on many rights and privileges as a necessary consequence of a criminal conviction. *O'Lone*, 482 U.S. at 348.

> [S]uch a standard is necessary "if prison administrators . . ., and not the courts [are] to make the difficult judgments concerning institutional operations." *Jones v. North Carolina Prisoner's Union*, 433 U.S. [119,] 128 [(1977)]. Subjecting day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and adopt innovative solutions to the intractable problems of

> prison administration. The rule would also distort the decision making process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby "unnecessarily perpetuat[ing] the involvement of the federal courts in the affairs of prison administration." *Procunier v. Martinez*, 416 U.S. [396], 407 [(1974)].

*Turner*, 482 U.S. at 89. The familiar *Turner* factors are: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) what impact that accommodation of the asserted constitutional right will have on other guards and inmates; and (4) whether there are other readily available alternatives at a *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89-91; *Beard*, 548 U.S. at 529. The *O'Lone* opinion closed with the statement, "We take this opportunity to reaffirm our refusal, even where claims are made under the First Amendment, to substitute our judgment on difficult and sensitive matters of institutional administration for the determinations of those charged with the formidable task of running a prison." 482 U.S. at 353 (internal citation omitted).

In this case, there is a valid, rational connection between the prison policy prohibiting military apparel and the legitimate governmental interest in minimizing the risk of prison violence. *See e.g.*, *Bruton v. McGinnis*, No. 96-1409, 1997 WL 139797, at * 2 (6th Cir. Mar. 26, 1997). The prison's legitimate interest in avoiding confrontations and violent episodes between inmates, sparked by the wearing of inflammatory symbols and insignia, is beyond question. Prison security is not only a legitimate governmental interest, it is recognized as a compelling governmental interest. *See Hoevenaar v. Lazaroff*, 422 F.3d 366, 370-71 (6th Cir. 2005); *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004). It is undisputed that plaintiff retains alternative means for

practicing his Jewish faith. When this Israeli Army yarmulke was confiscated plaintiff immediately put on another yarmulke. Plaintiff states that his current yarmulke (docket # 27, Ex. B) "has the Star of David on it which is on the National Flag of the State of Israel . . . ." (Plaintiff's Brief at 7, docket # 27). The impact that accommodation of plaintiff's asserted constitutional right would have on guards and inmates is obvious: it makes an already dangerous environment even more dangerous. (Burnett Aff. ¶ 13). There are no other readily available alternatives at a *de minimis* cost to valid penological interests. In summary, defendants' conduct easily passes muster under the *Turner* test. Defendants are entitled to judgment in their favor as a matter of law on plaintiff's First Amendment.

### B. Qualified Immunity

Assuming *arguendo* that plaintiff had been able to satisfy the initial requirement of demonstrating a First Amendment violation, plaintiff would nonetheless fall short of showing that the rights he claims each individual defendant violated were "clearly established" such that a reasonable official in the defendant's position, at the time the act was committed, would have understood that his or her behavior violated that right. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). The Supreme Court's decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), examined the underlying purpose of requiring that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198. The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein v. City of Dayton*, 440 F.3d 306, 316 (6th Cir. 2006). "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199); s*ee Perez v. Oakland County*, 466 F.3d 416, 428 (6th Cir. 2006) ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'"). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *King v. Ambs*, 519 F.3d 607, 612 (6th Cir. 2008) (quoting *Saucier*, 533 U.S. at 202). Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional, in light of preexisting law, the unlawfulness must be apparent. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999). "Ordinarily, a Supreme Court or Sixth Circuit decision on point is necessary." *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007); *see Jackson v. Schultz*, 429 F.3d 586, 592 (6th Cir. 2005). The court must focus on whether, at the time the defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004). "'[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir.

2006) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) ("Qualified immunity leaves government authorities 'ample room for mistaken judgments.'") (quoting *Scott v. Clay County*, 205 F.3d 867, 873 n. 9 (6th Cir. 2000)). "If reasonable officials could disagree on the issue, immunity should be recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997). "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key*, 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008).

Plaintiff has not shown that the defendants' actions violated his clearly established First Amendment rights. There is no governing authority holding, or even suggesting, that a prison official abridges First Amendment rights in the circumstances of this case. I find that defendants are entitled to summary judgment on the alternative basis of qualified immunity.

2. RLUIPA Claims

Plaintiff limited his RLUIPA claims to a request for *declaratory relief* against defendants in their official capacities as LCF's warden, LCF's chaplain, and CFA's special activities

director.[2] (Complaint at 13, ¶ d). "A suit against a person in his or her official capacity is a suit against the office and not the person." *Caudill v. Hollan*, 431 F.3d 900, 914 (6th Cir. 2005). Plaintiff's claims against LCF's warden and chaplain are moot as a result of plaintiff's present confinement at the Parnall Correctional Facility. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Plaintiff is not entitled to declaratory relief under RLUIPA against CFA's current special activities director. The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc-1(a). "The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion. The burden of proving the existence of a substantial burden rests on the religious adherent." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007); *see Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733 (6th Cir. 2007); *see also Dunlap v. Losey*, 40 F. App'x 41, 43 (6th Cir. 2002) ("RLUIPA . . . requires the complainant to show that his religious exercise was substantially burdened."). No

---

[2]This Court has repeatedly held that sovereign immunity bars RLUIPA claims for *damages* against State employees in their official capacities. *See e.g.*, *Porter v. Caruso*, No. 1:05-cv-562, 2008 WL 3978972 (W.D. Mich. Aug. 22, 2008); *Cardinal v. Metrish*, No. 2:06-cv-232, 2008 WL 696479 (W.D. Mich. Mar. 13, 2008).

reasonable trier of fact could find that depriving plaintiff of the Israeli Army yarmulke constitutes a "substantial burden" on the plaintiff's exercise of his Jewish faith.

RLUIPA does not define the phrase "substantial burden," and the Supreme Court "has not yet defined 'substantial burden' as it applies to RLUIPA." *Living Water*, 258 F. App'x at 733. In *Living Water*, the Sixth Circuit declined to establish a "bright line test" for determining a "substantial burden." *Id.* at 737. It held that the Supreme Court's Free Exercise Clause jurisprudence provides the appropriate analytical framework. *Id.* at 734. The Sixth Circuit emphasized that in the Free Exercise context, the Supreme Court has made clear that the "substantial burden' hurdle is high." *Id.* "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "'[A] substantial burden must place more than an inconvenience on religious exercise.'" *Id.* at 735 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A substantial burden is not established because the government's action makes the religious exercise more difficult or expensive. *Living Water*, 258 F. App'x at 734-35. It is not necessary to repeat the analysis of plaintiff's First Amendment claims. Suffice it to say that the burden on plaintiff's exercise of his faith resulting from the deprivation this Israeli Army yarmulke was insubstantial. Plaintiff put on another yarmulke immediately after the Israeli Army yarmulke was confiscated. I find that no reasonable trier of fact could find in plaintiff's favor on the "substantial burden" component of his RLUIPA claims.

**Recommended Disposition**

For the foregoing reasons, I recommend that defendants' motion for summary judgment (docket # 22) be granted, and that judgment be entered in favor of defendants on all plaintiff's claims.


Dated:   January 5, 2009             /s/  Joseph G. Scoville
                                     United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).